**GARCES, GRABLER & LeBROCQ, P.C.**
By:  Thomas A. Dinan, Esquire
Identification No. 91344
1515 Market Street, Suite 825
Philadelphia, PA 19102
(215) 235-2000 – Telephone
(215) 988-9390 – Facsimile
tdinan@garcesgrabler.com                          Attorneys for Plaintiffs

---

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA


JACQUELINE RIVAS                    :        CIVIL ACTION – LAW
160 Catherine Street                :
Elizabeth, NJ  07201,     Plaintiff :        No.
                                    :
          v.                        :
CBK LODGE GENERAL PARTNER, LLC :
individually and d/b/a              
Camelback Lodge and Indoor Water Park
and d/b/a Camelback Lodge and d/b/a
Aquatopia
529 Camelback Road                  :
Tannersville, PA  18372             :
          and                       :
                                    :
CBK LODGE, L.P., individually and d/b/a
Camelback Lodge and Indoor Water Park
and d/b/a Camelback Lodge and d/b/a
Aquatopia                           :
193 Resort Drive                    :
Tannersville, PA  18372             :


                              JURY TRIAL DEMANDED
              Defendants

---

# COMPLAINT

## I.  PARTIES

1.  Plaintiff Jacqueline Rivas is an adult individual who, at all relevant times, has maintained residency in the State of New Jersey at the above-listed address.

2.  Defendant, CBK Lodge, L.P. ("CBK Lodge L.P."), a Pennsylvania business entity, maintains the following business address:  193 Resort Drive Tannersville, PA  18732.

3.  Defendant CBK Lodge General Partner, LLC ("CBK Lodge GP"), a Pennsylvania business entity, maintains the following business address:  529 Camelback Road, Tannersville, PA  18372.

4.  Defendant, CBK Lodge, L.P., at all relevant times, owned and/or used the following fictitious names:

> i.  "Camelback Lodge and Aquatopia Indoor Waterpark,"
> registered in Pennsylvania and addressed at 193 Resort Drive,
> Tannersville, PA  18372; and
>
> ii.  "Camelback Lodge," registered in Pennsylvania and addressed
> at 193 Resort Drive, Tannersville, PA  18372."

5.  Defendant, CBK Lodge, G.P, at all relevant times, owned and/or used the following fictitious names:

> i.  "Camelback Lodge and  Aquatopia Indoor Waterpark,"
> registered in Pennsylvania and addressed at 193 Resort Drive,
> Tannersville, PA  18372; and
>
> ii. "Camelback Lodge," registered in Pennsylvania and addressed at
> 193 Resort Drive, Tannersville, PA  18372."

6.  Upon information and believe, at all times relevant hereto Defendants CBK Lodge, L.P. and CBK Lodge GP, owned, operated, possessed, managed, controlled and/or

2

maintained the business operations and premises hereinafter referred to as the "Camelback Lodge & Indoor Aquatopia Waterpark."

7.      Plaintiff shall hereinafter collectively refer to the entities, fictitious names, and business operation(s), identified in the preceding paragraphs as the "Camelback Defendants."

8.      At all times relevant hereto, the Camelback Defendants acted by and through their employees, servants and agents and/or ostensible agents, all of whom acted within the course and scope of their employment, for and on behalf of the Camelback Defendants and for whom the Camelback Defendants are vicariously liable for their negligent acts and/or omissions through the doctrine of respondeat superior.

## II. JURISDICTION AND VENUE

9.      Jurisdiction is founded upon 28 U.S.C. §1332.

10.     Plaintiff is a resident of the State of New Jersey.

11.     Camelback Defendants are residents of the Commonwealth of Pennsylvania, where the corporate defendants have a principal place of business.

12.     The amount in controversy is in excess of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

13.     The negligent, grossly negligent and/or reckless acts and/or omissions occurred in the Middle District of Pennsylvania, where the Camelback Defendants regularly and continuously transact business, and therefore venue properly lies in the United States District Court for the Middle District of Pennsylvania.

## III.    FACTUAL BACKGROUND

14.     Plaintiff incorporates herein by reference all preceding paragraphs of this Complaint as if fully set forth herein.

15.     On January 12, 2018, Plaintiff Jacqueline Rivas, while a business invitee of Camelback Lodge and the Camelback Defendants, suffered acute, severe cervical spine injuries necessitating surgical correction when its Storm Chaser Water Coaster malfunctioned causing Plaintiff and other riders to become stuck inside the slide causing another rider to bang into her, from behind, causing severe injuries as described in more specific detail below.

16.     At all times relevant hereto, Plaintiff Jacqueline Rivas was a business invitee of Camelback Lodge and the Camelback Defendants and owed the highest duty of care under Pennsylvania law.

17.     At all times relevant hereto, Plaintiff Jacqueline Rivas was a business invitee of Camelback Lodge and the Camelback Defendants and had the reasonable expectation that the Storm Chaser Water Coaster would be in good and safe working order, be routinely and safely inspected,  be safely operated by  properly trained employees,  be adequately staffed by properly trained employees, be free from latent defects/malfunctions which she would have no obligation or ability to discover prior to injury, be warned of latent defects that could cause her physical injury and be operated in accordance with all manufacturer specifications  and industry standards so as to eliminate riders such as Plaintiff from being stuck inside the slide, struck from behind and injured by other riders who were negligently and/or  recklessly continuously sent down the slide when it should have been apparent to Defendants' employees that Plaintiff and other riders were stranded inside of the slide and exposed to risk of serious injury.

18.     At all times relevant hereto and upon information and belief, the Storm Chaser Water Coaster is to be adequately staffed by properly trained employees both at the top and bottom of the ride, who are to maintain constant, accurate communication with each other, so as to prevent and/or timely remedy incidents of riders becoming stuck inside the slide and to prevent

4

and/or minimize risk of physical injury to said riders such as Plaintiff in the event that a rider becomes stuck.

19.      At all times relevant hereto and upon information and belief, Defendants were on actual and/or constructive notice that the Storm Chaser Water Coaster could malfunction and strand riders inside of the slide thereby subjecting them to risk of physical injury.

20.      On the date of the accident, Plaintiff and her younger, teenage brother decided to ride the aforementioned Storm Chaser Water Coaster.

21.      The Storm Chaser Water Coaster is a ride that can accommodate two passengers in a raft.

22.      While at the top entrance area of the slide, Plaintiff and her brother were not advised of any restrictions, by Defendants' employees, which would prohibit them riding the Storm Chaser Water Coaster.

23.      Defendants' employee positioned Plaintiff and her brother in the raft in such a way that the larger passenger, Plaintiff Jacqueline Rivas, was in the rear of the raft as she was the heavier person.

24.      At all times relevant hereto and upon information and belief, Plaintiff and her brother were advised, by Defendants' employees, that in the event they became stuck inside the slide to remain there and they would be safely retrieved by a lifeguard.

25.      At all times relevant hereto and upon information and belief, the Storm Chaser Water Coaster was equipped with a computerized monitor and/or control panel that is to track the riders once they are inside the slide.

26.      At all times relevant hereto and upon information and belief, the Storm Chaser Water Coaster was equipped with a computerized monitor and/or control panel that is to track the

riders once they are inside the slide which is to be monitored by employees for any abnormalities and acted upon quickly so as to prevent injury to riders.

27.     At all times relevant hereto and upon information and belief, in the event of a malfunction in the slide, which causes a rider to become stuck inside, the panel is equipped with emergency button to shut down the slide.

28.     At all times relevant hereto and upon information and belief, the Storm Chaser Water Coaster was to be adequately staffed with properly trained employees both at the top and bottom of the ride so as to observe whether riders are timely finishing the slide and exiting safely at the bottom.

29.     At all times relevant hereto and upon information and belief, the Storm Chaser Water Coaster was to be adequately staffed with properly trained employees both at the top and bottom of ride who were to maintain communication and take evasive, emergent remedial action in the event a rider does not exit the bottom of the slide in a timely fashion as this is or should be notice that a rider is stuck inside of the slide and at risk for physical injury.

30.     At all times relevant hereto and upon information and belief, a rider not timely exiting/finishing the slide in a timely fashion should serve as actual and/or constructive notice to Defendants' employees that there is an emergent situation that requires their action to prevent injury to riders including Plaintiff and that, more importantly, no additional riders are to be sent down the slide until the stranded rider is safely removed.

31.     At all times relevant hereto and upon information and belief, in the event of a malfunction in the slide, which causes a rider to become stuck inside, the Defendants' employees had a duty to quickly identify the problem, the location, react appropriately to perform an

emergent evacuation of the stranded rider or riders to prevent physical injury to invitees such as Plaintiff.

32.     At all times relevant hereto and upon information and belief, the aforementioned training and safety procedures are designed to prevent riders from being continuously sent down the slide when it is even remotely possible that another, prior rider is stranded inside of the slide and at risk for physical injury.

33.     At all times relevant hereto and upon information and belief, Defendants were required to inspect, maintain and operate said water slide in accordance with ASTM Standard 2376 so as to prevent injury to Plaintiff.

34.     At all times relevant hereto and upon information and belief, Defendants were required to inspect, maintain and operate said water slide in accordance with The Pennsylvania Amusement Ride Inspection Act so as to prevent injury to Plaintiff.

35.     At all times relevant hereto and upon information and belief, Defendants were required to inspect, maintain and operate said water slide in a reasonable, safe manner so as to prevent foreseeable injury to Plaintiff.

36.     On the date of the aforementioned incident, once positioned in the raft, Defendants' employee placed Plaintiff and her brother in position to begin descent down the slide.

37.      As the descent began with Plaintiff in the rear of the raft and her brother in front, they approached a curve in the slide approximately one minute into the ride.

38.     As they approached the curve, Plaintiff's raft stopped due to no fault of their own.

39.     Plaintiff and her brother were stuck inside of the Storm Chaser Water Coaster.

40.     Plaintiff and her brother were screaming for help.

41.     At this point, Plaintiff and her brother were stranded inside of Storm Chaser Water Coaster for several minutes awaiting assistance from Defendants' employees.

42.     As Plaintiff and her brother were stranded inside of Storm Chaser Water Coaster for several minutes awaiting assistance from Defendants' employees, no assistance came in a timely fashion.

43.     Defendants' employees failed to properly identify, diagnose and properly remedy an emergent situation with Plaintiff and her brother becoming stranded inside the slide and being at risk to physical injury.

44.     Instead of properly identifying, diagnosing and properly remedying an emergent situation by stopping the ride and rescuing Plaintiff and her brother, Defendants' employees recklessly continued to send riders down the slide thereby creating an all but certain collision and physical injury to Plaintiff.

45.     As a result of this dereliction of responsibility by Defendants' employees, another rider was sent down the slide heading directly for Plaintiff and her brother.

46.     As the subsequent rider was approaching Plaintiff and her brother, Plaintiff and her brother heard the screaming and could sense the impending impact.

47.     At this point, Plaintiff and her brother were positioned on their raft facing the forward path of the slide.

48.     Plaintiff and her brother were violently struck from behind by the subsequent rider.

49.     Due to Plaintiff's positon in the rear of the raft, she absorbed the impact about her head, neck and upper back area.

50.     Upon impact, Plaintiff and her brother were thrown from their raft.

51.     Upon impact, Plaintiff temporarily lost her bathing suit bottom.

52.     Upon impact, Plaintiff and her brother were pushed forward to an area of the slide that had water flow.

53.     Upon the impact from the adult and child in the raft behind Plaintiff, all four riders were without their rafts and stranded in the interior of the slide.

54.     Next, two more riders are sent down by Defendants' employees who become stranded in the slide bringing the total stranded riders to six.

55.     The six stranded riders, including Plaintiff, are positioned to the side of the slide to avoid further impact from the riders that are being sent down by Defendants' employees who failed to recognize the danger caused by their failure to monitor the safe progress of the riders including Plaintiff.

56.     Two more riders are sent down that make it through the morass of people and safely exit at the proper exit point at the bottom of the slide.

57.     Upon information and belief, the last two riders notified Defendants' employees of the six riders stranded inside of the slide.

58.     Upon information and belief, Defendants' employees then stopped the slide and emergently rushed to the level where the riders, including Plaintiff and her brother who were stranded for approximately 15 minutes inside the slide, are stranded and begin to extract them from the slide.

59.     At that point, Plaintiff is taken to the emergency room via emergency medical services for her acute, severe cervical spine injuries caused by the aforementioned incident.

60.     Pursuant to the doctrine of res ipsa loquitor, Defendants are wholly responsible for Plaintiff's injuries/damages as the aforementioned event is of a kind which ordinarily does not

occur in the absence of negligence, other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence and the indicated negligence is within the scope of the defendant's duty to the plaintiff.

61.     As a direct and proximate result of the carelessness, negligence, gross negligence, recklessness, and other liability-producing conduct of the Camelback Defendants, Plaintiff Jacqueline Rivas suffered serious, severe, permanent and disabling injuries, including but not limited to a herniated discs at C4-C5 and C5-C6 with annular tear and thecal sac impingement, T9-10 disc bulge with thecal sac impingement, bi-lateral upper extremity radiculopathy necessitating epidural steroidal injections at multiple levels and Anterior Cervical Discectomy at C4-C5 with removal of extruded disc fragment and artificial disc replacement,  injuries to her muscles, ligaments, tendons and nerves, mental and emotional anguish, scarring, depression, despair, loss of life's pleasures chronic pain and other injuries, the full extent of which are not yet known, and some or all of which may be permanent  in nature.

62.     As a direct and proximate result of Camelback Defendants' conduct, Plaintiff Jacqueline Rivas has required, continues to require and will in the future require, medical treatment and care, and, has in the past, continues, presently and may in the future incur the costs of medicines, medical care, hospitalizations, treatment, operations, testing and rehabilitation in an attempt to alleviate and/or cure her condition.

63.     As a direct and proximate result of Camelback Defendants' conduct, Plaintiff Jacqueline Rivas has suffered, continues to suffer and will suffer in the future, *inter alia*, severe pain and suffering, scarring, disfigurement, deterioration and loss of muscle, sleep loss, loss of independence, mental anguish, humiliation, embarrassment, fear, loss of well-being, inability to

enjoy the normal pleasures of life, and restrictions on her ability to engage in normal activities and pleasures of life and other tangible losses.

## COUNT I – NEGLIGENCE
## PLAINTIFF, JACQUELINE RIVAS V. ALL DEFENDANTS

64.     Plaintiff incorporates herein by reference all preceding paragraphs of this Complaint as if fully set forth hereinafter.

65.     At all times relevant hereto, the Defendants were responsible for the hiring, training, supervision and oversight of their agents, servants and employees who were involved in the use, supervision, control and operation of the Storm Chaser Water Coaster on or about January 12, 2018.

66.     At all times relevant hereto, Defendants were responsible to ensure that their agents, servants and employees involved in the use, supervision, control and operation of the Storm Chaser Water Coaster were properly hired, trained, experienced and supervised in the safe and proper use, supervision, control and operation of the Storm Chaser Water Coaster.

67.     At all times relevant hereto, Defendants were responsible for the safety of their guests and business invitees who use and/or rode the Storm Chaser Water Coaster and had a non-delegable duty to operate the rides in a safe manner for their business invitees, such as Plaintiff Jaqueline Rivas.

68.     The Camelback Defendants were responsible for having competent and properly trained staff provide instruction to their lifeguards, waterpark attendants and all business invitees on the safe and proper use of rides, including the Storm Chaser Water Coaster.

69.     Ms. Rivas was a business invitee, to whom Defendants owed the highest duty of care.

70.     Upon information and belief, Plaintiff's injuries were caused by the negligence, carelessness, wantonness, willfulness, recklessness and gross negligence of Defendants individually and/or through their agents, ostensible agent,  servants, workers and/or employees, which included the following breaches of said duty:

    i.     Creating a dangerous condition that caused Plaintiff to become stuck inside the slide;

    ii.    Permitting dangerous condition that caused Plaintiff to become stuck inside the slide ;

    iii.   Failing to properly recognize a danger to Plaintiff once she was stuck inside the slide;

    iv.   Failing to properly recognize a danger to Plaintiff and take proper, timely remedial action to alleviate the risk of harm to Plaintiff;

    v.     Creating a dangerous condition by continuing to send subsequent riders down the slide while Plaintiff was stranded inside and helpless to protect herself from physical injury;

    vi.   Failing to warn Plaintiff of the dangers presented by entering and riding the Storm Chaser Water Coaster;

    vii.  Failing to warn Plaintiff of the dangers presented by becoming stuck inside the Storm Chaser Water Coaster

   viii.  Permitting Plaintiff to enter and ride the Storm Chaser Water Coaster when it was not safe to do so;

    ix.   Failing to inspect for dangerous conditions that caused Plaintiff to become stuck inside the slide;

    x.     Failing to warn of dangerous conditions that caused Plaintiff to become stuck inside the slide;

    xi.   Failing to properly monitor the Plaintiff while inside the slide so as to become aware that she was stranded inside;

    xii.  Failing to properly identify a safety risk to Plaintiff as a result of her being stuck inside the slide;

12

xiii.    Defendants' employees failing to properly communicate with each other at the top and bottom of the slide so as to recognize that Plaintiff was stranded inside the slide;

xiv.    Failing to take timely, evasive action as to prevent injury to Plaintiff;

xv.    Recklessly continuing to send other riders down the slide when Defendants' employees knew or should have known that Plaintiff was stranded inside and susceptible to physical injury;

xvi.    Having inadequate employees supervising the Storm Chaser Water Coaster;

xvii.    Understaffing of the Storm Chaser Water Coaster;

xviii.    Failing to properly train their agents, servants and/or employees on safe and proper means of operation of the Storm Chaser Water Coaster

xix.    Failing to instruct users of the Storm Chaser Water Coaster on safe and proper means of entering the Storm Chaser Water Coaster and avoiding injury on the Storm Chaser Water Coaster

xx.    Failing to prevent unsafe practices and instructions by their operators/ lifeguards and to rescue Plaintiff from harm;

xxi.    Acts constituting negligence *per se*;

xxii.    Falling below the industry standard of care with respect to hiring and training employees and posting appropriate warnings and instructions;

xxiii.    Failing to adopt, implement and follow appropriate policies and procedures regarding safety to ensure that Defendants and their agents, servants and/or employees were properly trained and supervised in the safe operation, use, control and supervision of the Storm Chaser Water Coaster;

xxiv.    Failing to hire agents, servants and/or employees with the necessary skills, expertise and judgment to supervise guests and business invitees, including Plaintiff, using the Storm Chaser Water Coaster;

xxv.    Failing to adequately supervise their waterpark attendants, operators and lifeguards;

xxvi.     Failing to adequately supervise those persons attempting to use the
          Storm Chaser Water Coaster, including Plaintiff;

xxvii.    Failing to adhere to the Storm Chaser Water Coaster's policies,
          procedures and manuals;

xxviii.   Failing to have adequate protocols and procedures for the safe use
          of rides such as the Storm Chaser Water Coaster;

xxix.     Failing to warn of the dangers posed by the Storm Chaser Water
          Coaster, including the risks associated with Storm Chaser Water
          Coaster;

xxx.      Failing to ensure that the Storm Chaser Water Coaster had
          sufficient water flow so as to prevent Plaintiff from being stranded
          inside the slide;

xxxi.     Failing to follow the recommendations of the Storm Chaser Water
          Coaster manufacturer regarding safety and the control, operation,
          use and supervision of the Storm Chaser Water Coaster;

xxxii.    Violating Defendants' internal policies and procedures;

xxxiii.   Failing to properly conform with industry safety standards and/or
          applicable regulations and/or statutes;

xxxiv.    Failing to safely operate the Storm Chaser Water Coaster in
          accordance with ASTM Standard 2376 so as to prevent injury to
          Plaintiff;

xxxv.     Failing to safely operate the Storm Chaser Water Coaster in
          accordance with The Pennsylvania Amusement Ride Inspection
          Act so as to prevent injury to Plaintiff; and

xxxvi.    Failing to use due care under the circumstances so as to prevent
          injury to Plaintiff.

71.    As a result of the Defendants' carelessness, negligent, grossly negligent, reckless

and outrageous conduct, Plaintiff, Jacqueline Rivas was legally and proximately caused to

sustain painful, permanent, life-altering injuries and damages, the details of which are more fully

set forth in the preceding paragraphs of this Complaint.

14

WHEREFORE, Plaintiff demands damages of all Defendants in an amount in excess of the jursidictional limit, exclusive of interest and costs, punitive damages, prejudgment and post-judgment interest, delay damages costs and such other relief as this Honorable Court deems reasonable and appropriate.

## COUNT II – PUNITIVE DAMAGES
## PLAINTIFF, JACQUELINE RIVAS V. ALL DEFENDANTS

72.     Plaintiff incorporates herein by reference all preceding paragraphs of this Complaint as if fully set forth hereinafter.

73.     The conduct of Defendants in a) recklessly failing to inspect, maintain and operate the Storm Chaser Water Coaster in a reasonably safe manner so as to prevent foreseeable injury to Plaintiff, b)failing to properly train its staff on the safe operation of the Storm Chaser Water Coaster, c) failing to adequately staff the Storm Chaser Water Coaster with qualified personnel, d) Defendants' employees' failure to properly monitor the Storm Chaser Water Coaster for stranded riders and take proper remedial action to prevent injury to Plaintiff, e) Defendants' employees failing to properly communicate with each other at the top and bottom of the slide so as to recognize that Plaintiff was stranded inside the slide f) Defendants' employees' failure to observe Plaintiff being stranded inside the Storm Chaser Water Coaster and failure to take timely, emergent remedial action so as to prevent injury to Plaintiff and g) Defendants' employees' recklessly continuing to send other riders down the slide, thereby actually creating injury to Plaintiff,  when Defendants' employees knew or should have known that Plaintiff was stranded inside and susceptible to physical injury was outrageous and demonstrates willful, wanton or reckless conduct, as well as a conscious indifference and/or reckless disregard for the

safety of the general public, including Plaintiff, and justifies an award of punitive damages which are sought herein by Plaintiff against this Defendant.

WHEREFORE, Plaintiff demands damages of all Defendants in an amount in excess of the jursidictional limit, exclusive of interest and costs, punitive damages, prejudgment and post-judgment interest, delay damages costs and such other relief as this Honorable Court deems reasonable and appropriate.

## NOTICE OF PERSERVATION OF EVIDENCE

PLAINTIFF HEREBY DEMANDS AND REQEUSTS THAT DEFENDANTS TAKE NECESSARY ACTION TO ENSURE THE PRESERVATION OF ALL DOCUMENTS, COMMUNICATIONS, WHETHER ELECTRONIC OR OTHERWISE, INCLUDING BUT NOT LIMITED TO VIDEO OF THE ACCIDENT, PHOTOPGRAPHS OF THE ACCIDENT/PLAINTIFF, VIDEO OF THE  PLAINTIFF AND/OR SCENE, INURY , ACCIDENT AND INSPECTION REPORTS SUBMITTED TO THE COMMONWEALTH OF PENNSYLVANIA,  ITEMS AND THINGS IN THE POSSESSION OR CONTROL OF ANY PARTY TO THIS ACTION, OR ANY ENTITY OVER WHICH ANY PARTY TO THIS ACTION HAS ACCESS, ANY DOCUMENTS, ITEMS OR THINGS WHICH MAY IN ANY MANNER BE RELEVANT TO OR RELATE TO THE SUBJECT MATTER OF THE CAUSES OF ACTION AND/OR ALLEGATIONS OF THIS COMPLAINT.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a jury trial.

GARCES & GRABLER & LEBROCQ, P.C.

BY: _____

THOMAS A. DINAN, ESQUIRE
1515 Market Street, Suite 825
Philadelphia, PA 19102