UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACQUELINE RIVAS,<br><br>    Plaintiff,<br><br>  v.<br><br>CBK LODGE GENERAL PARTNER, LLC, et al.,<br><br>    Defendants. | CIVIL ACTION NO. 3:19-CV-01948<br><br>(MEHALCHICK, M.J.) |

**MEMORANDUM**

Presently before the Court is a Motion to Dismiss filed by Third-Party Defendant Whitewater West Industries LTD ("Whitewater") on February 8, 2021. (Doc. 69). On November 10, 2020, Defendant CBK Lodge, L.P. ("CBK") filed its Third-Party Complaint against Whitewater for indemnification, or alternatively, contribution regarding claims brought against CBK in Plaintiff Jacqueline Rivas's ("Rivas") original Complaint which was filed on November 12, 2019. (Doc. 63; Doc. 1). In her Complaint, Rivas brings claims of negligence and punitive damages against Defendants CBK and CBK Lodge General Partner, LLC (hereinafter, collectively known as "Camelback"), for injuries arising out of an incident at Camelback's waterpark and the alleged malfunction of its water slide. (Doc. 1, at 2, 11-16). Rivas also brings a Motion for Sanctions, filed on March 15, 2021, against Camelback for failing to withdraw the Third-Party Complaint. (Doc. 76).

In its Motion to Dismiss, Whitewater alleges that Camelback has failed to participate in mandatory mediation as is required by the contract between Whitewater and Camelback and has failed to state a claim of indemnification and contribution in its Third-Party

Complaint against Whitewater. (Doc. 69, at 3). For the reasons discussed herein, the Court will **GRANT** Whitewater's Motion to Dismiss and **DENY** Rivas's Motion for Sanctions. (Doc. 69; Doc. 76).

I. **BACKGROUND AND PROCEDURAL HISTORY**

Rivas filed her initial Complaint on November 12, 2019. (Doc. 1). The case was selected for mandatory referral to court annexed mediation on December 10, 2019. (Doc. 11). Rivas and Camelback participated in mediation to no avail. On September 4, 2020, Camelback filed a Motion for Leave to File a Third-Party Complaint, which the Court granted on October 15, 2020. (Doc. 45; Doc. 61). Camelback filed a Third-Party Complaint against Whitewater on November 10, 2020. (Doc. 63).

In her Complaint, Rivas alleges that she suffered injuries after an incident that occurred when a waterslide at Camelback's waterpark allegedly malfunctioned. (Doc. 1, at 4). Rivas contends that she and her brother became stuck inside the slide which caused other riders to run into her from behind causing her injuries. (Doc. 1, at 4). Rivas states that she and her brother screamed for help and did not receive assistance from the waterpark employees "for approximately 15 minutes." (Doc. 1, at 7-9). Instead, more riders were sent down the slide, causing a collision with Rivas. (Doc. 1, at 8). Rivas seeks damages "in an amount in excess of the jurisdictional limit, exclusive of interest and costs, punitive damages, prejudgment and post-judgment interest, and delay damages costs. (Doc. 1, at 15, 16).

In its Third-Party Complaint, Camelback seeks "indemnification, or in the alternative, contribution on a proportionate basis with regard to [Rivas's] claims." (Doc. 63, at 2). Camelback contends that Whitewater was the manufacturer of the waterslide upon which Rivas's injuries allegedly occurred and that any liability that arises from Rivas's lawsuit "will

have arisen out of the affirmative, active and primary negligence of [Whitewater]". (Doc. 63, at 2-3).

Whitewater filed its Motion to Dismiss on February 8, 2021, and Camelback filed its brief in opposition on February 22, 2021. (Doc. 69; Doc. 72). In its Motion to Dismiss, Whitewater claims that there is a mandatory mediation clause in the contract between Camelback and Whitewater and that the matter should be dismissed or stayed "pending resolution of mediation." (Doc. 70, at 11-14). Additionally, Whitewater states that Camelback has failed to adequately plead a claim for indemnification or contribution. (Doc. 70, at 9-11). In response, Camelback alleges that the mediation provision "does not apply to third party personal injury litigation" and that it cannot preclude Plaintiff from pursuing a claim in court against Whitewater. (Doc. 72, at 17-18). Camelback also states that it has properly stated a claim due to Whitewater's position as the manufacturer of the waterslide at issue. (Doc. 72, at 13).

Finally, Rivas filed a Motion for Sanctions against Camelback on March 15, 2021, for failing to withdraw its Third-Party Complaint. (Doc. 76). In her Motion for Sanctions, Rivas contends that her consent to the joinder of Whitewater was "improperly obtained." (Doc. 76, at 1). Camelback argues that the joinder of Whitewater as a party was proper and that Plaintiff's opposition to the joinder of Whitewater would have been immaterial to the Court granting leave to file the Third-Party Complaint. (Doc. 78, at 3-4).

The Motion to Dismiss and Motion for Sanctions have been fully briefed and are ripe for disposition. (Doc. 69; Doc. 70; Doc. 72; Doc. 73; Doc. 75; Doc. 76; Doc. 77; Doc. 78; Doc. 79).

## II. Discussion

### A. Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.,* 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions' . . . ." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need the

court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cali. St. Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan*, 20 F.3d at 1261. This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

Additionally, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Thus, a well-pleaded complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action. There is no requirement that the pleading be specific or probable. *Schuchardt*, 839 F.3d at 347 (*citing Phillips v. Cty. of Allegheny*, 515 F.3d at 224, 233-234 (3d Cir. 2008). Rule 8(a) requires a "showing that 'the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551

U.S. 89, 93-94 (2007) (quoting Fed. R. Civ. P. 8(a)(2)); *see also Phillips*, 515 F.3d at 233 (citing *Twombly*, 550 U.S. at 545).

### B. MEDIATION CLAUSE

Whitewater contends that Camelback's Third-Party Complaint should be dismissed due to the existence "of a contractual provision between the parties mandating mediation prior to litigation." (Doc. 69, at 11). The contract entered into between Whitewater and Camelback requires mediation of "any dispute . . . between the parties." (Doc. 69, at 13; Doc. 69-3, at 9). Whitewater states that this language is "clear and unambiguous" and that the clause applies to any claim between the parties. (Doc. 69, at 13-14). Additionally, Whitewater argues that the Third-Party Complaint is easily severable and could be "addressed independently of the Complaint." (Doc. 69, at 14). Camelback avers that the mediation clause was only intended "to apply to commercial disputes between" Whitewater and Camelback as is evidenced by the surrounding language regarding the construction industry and the requirement to continue working on the construction throughout the mediation. (Doc. 72, at 17; Doc. 69-3, at 9-10). Camelback also argues that mandating mediation would compel Rivas to mediate the matter, even though she was not a signatory to the contract. (Doc. 72, at 18).

As dictated by the agreement between the parties, the Court will apply Pennsylvania law in its interpretation of the mediation clause. (Doc. 69-3, at 1) ("The Contract Documents shall be governed and interpreted in accordance with the laws of the Commonwealth of Pennsylvania."); *see also Pacanowski v. Fin., LP,* 271 F. Supp. 3d 738, 744 (M.D. Pa. 2017). Under Pennsylvania law, "'[w]hen a written contract is clear and unequivocal, its meaning must be determined by its contents alone.'" *Jeddo Coal Co. v. Rio Tinto Procurement (Singapore) Ptd Ltd.*, No. 3:16-CV-621, 2020 WL 3474078 at \*9 (M.D. Pa. Feb. 10, 2020) (citing

*Bank, N.A. v. Aetna Bus. Credit, Inc.,* 619 F.2d 1001, 1010 (3d Cir. 1980); *Mace v. Atl. Ref. & Mktg. Corp.*, 785 A.2d 491, 496 (Pa. 2001)).

The Third Circuit has outlined how courts should interpret contractual terms under the ordinary principles of Pennsylvania contract law:

> The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties. The intent of the parties to a written agreement is to be regarded as being embodied in the writing itself. The whole instrument must be taken together in arriving at contractual intent. Courts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed. When a writing is clear and unequivocal, its meaning must be determined by its contents alone. Only where a contract's language is ambiguous may extrinsic or parol evidence be considered to determine the intent of the parties. A contract contains an ambiguity if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. This question, however, is not resolved in a vacuum. Instead, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. In the absence of an ambiguity, the plain meaning of the agreement will be enforced. The meaning of an unambiguous written instrument presents a question of law for resolution by the court.
>
> *Great Am. Ins. Co. v. Norwin Sch. Dist.*, 544 F.3d 229, 243 (3d Cir. 2008) (internal citation omitted) (citing *Murphy v. Duquesne Univ.*, 565 Pa. 571, 590-91 (Pa. 2001)); *see also Jeddo Coal*, 2020 WL 3474078, at *10.

A contract is ambiguous only if it is reasonably susceptible to different constructions and capable of being understood in more than one sense. *St. Paul Fire & Marine Ins. Co. v. Lewis*, 935 F.2d 1428, 1431 (3d Cir. 1991).

The contractual provision in dispute contains a clause instructing the parties on "Resolution of Disputes." (Doc. 69-3, at 9-10). The clause states, in relevant part:

> In the event that any dispute arises between the parties to this Contract, the parties shall first endeavor to settle the dispute through direct discussions between their respective authorized representatives designated for such purpose. If the authorized representatives cannot resolve the dispute, the parties shall next endeavor to resolve the dispute through mediation. Mediation shall be conducted at [CBK's] offices in Cohoes, New York under the Construction

7

> Industry Mediation Rules of the American Arbitration Association ("AAA") by a mediator who is experienced and knowledgeable about the construction industry and construction contracts. . . . Unless otherwise agreed in writing, [Whitewater] shall continue with the Work and maintain the Project Schedule during any dispute resolution proceeding.

(Doc. 69-3, at 9-10).

Although the provision does not expressly provide for claims that arise pertaining to indemnification, courts have permitted parties bringing indemnification disputes to pursue mediation as outlined in agreements between the parties. *See In re NBR Antitrust Litig.*, 207 F. App'x, 166, 170 (3d. Cir. 2006) (disputes regarding indemnification were subject to an arbitration clause contained within related agreements between the parties); *Dowton v. Equity Lifestyle Properties, Inc.*, No. 3:16-CV-659, 2017 WL 2797971 at *4 (M.D. Pa. June 28, 2017) (the arbitration clause found within an agreement between the parties included "any claims arising in tort, and addressed by the indemnification clause").

The mediation agreement encompasses "any dispute [that] arises between the parties." (Doc. 69-3, at 9). There is no further qualifying language, only mention of the necessity to acquire a mediator who is privy to information regarding the construction industry. (Doc. 69-3, at 9). The "Indemnification" clause found within the contract specifies the confines of indemnification to only pertain to issues "that may arise from the Work." (Doc. 69-3, at 9). In contrast, the "Resolution of Disputes" clause does not specify that the language only applies to situations that "arise from the Work." (Doc. 69-3, at 9-10). The "Resolution of Disputes" clause mentions the need for "a mediator who is experienced and knowledgeable about the construction industry and construction contracts" and that the mediation "shall be conducted . . . under the Construction Industry Mediation Rules of the American Arbitration Association." (Doc. 69-3, at 9). This language does not preclude an indemnification claim

through a Third-Party Complaint from the all-encompassing language of "any dispute." (Doc. 69-3, at 9). Although the agreement dictates the need for Whitewater to "continue with the Work," it does not limit the requirement of mediation to disputes arising from the work nor does it preclude indemnification claims. (Doc. 69-3, at 10). If the intent between the parties was to limit the requirement of mediation to work-related issues, then such qualifying language could have been included. *See Dowton*, 2017 WL 2797971 at *2 ("The Arbitration clause pertains to '[a]ny dispute or claim arising *out of this Agreement*.'") (emphasis added); *NN&R, Inc. v. OneBeacon Ins. Grp.*, No. 03-5011(JBS), 2006 WL 231596 at *2 (D.N.J. Jan. 30, 2006) ("If any dispute or disagreement shall arise in *connection with any interpretation of the Agreement, its performance or nonperformance,* the parties shall . . . settl[e the matter] by arbitration, in accordance with the rules of the American Arbitration Association.") (emphasis added). The Court finds that the "Resolution of Disputes" clause pertaining to "any dispute . . . between the parties" applies to Camelback's Third-Party Complaint. Therefore, Whitewater's Motion to Dismiss is **GRANTED**.[1] (Doc. 69-3, at 10; Doc. 69).

---

[1] Camelback also argues that compelling mediation between itself and Whitewater would force Rivas to mediate her claims and deprive her of her right to a jury trial. (Doc. 72, at 18-19). Although it is true that a non-signatory to an agreement cannot be compelled to perform under that agreement, absent the presence of an exception, Rivas is not compelled to mediate her claims. *See E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber and Resin Intermeidates, S.A.S.*, 269 F.3d 187, 195 (3d Cir. 2001). The agreement to mediate exists between Camelback and Whitewater and pertains to the Third-Party Complaint that bring claims of indemnification and contribution. (Doc. 69-3; Doc. 63). Thus, Rivas's claims remain in this Court.

9

C. MOTION FOR SANCTIONS

Rivas moves for sanctions against Camelback pursuant to Rule 11 of the Federal Rules of Civil Procedure on the grounds that Camelback "improperly obtained" Rivas's "consent to the permissive joinder [of Whitewater]." (Doc. 76, at 1). Specifically, Rivas alleges that Camelback made false representations regarding its retention of an expert thus inducing Rivas's consent to the joinder of Whitewater under false pretenses. (Doc. 77, at 8). Additionally, Rivas states that she was not provided with pertinent documents that would have caused her to "vehemently oppos[e] the proposed joinder of [Whitewater]." (Doc. 77, at 9). Camelback opposes the Motion for Sanctions and argues that Whitewater "is clearly a proper party to the instant lawsuit" and Plaintiff's opposition would have been immaterial to the Court granting leave to file a Third-Party Complaint against Whitewater. (Doc. 78, at 3-4).

> Rule 11 of the Federal Rules of Civil Procedure states, in pertinent part:
>
> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper-whether by signing, filing, submitting, or later advocating it-an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> Fed. R. Civ. P. 11.

If a party or its counsel violates this provision, the opposing party may move for the imposition of sanctions, which may include an order directing payment to the movant of "part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c). The purpose of Rule 11 is to correct litigation abuse. *Gaiardo v. Ethyl Corp.,* 835 F.2d 479, 483 (3d Cir. 1987). "Fed. R. Civ. P. 11 provides for the imposition of sanctions against counsel or parties acting *pro se* if the court finds that pleadings or other papers signed by the counsel or the party are 'frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.'" See *Baxter v. A.T. & T. Comm.*, No. 88-471 (CFS) 1989 WL 121058, at * 2 (D.N.J. Sept. 5, 1989) (quoting *Christiansburg Garment Co. v. Equal Emp't Opportunity Comm'n*, 434 U.S. 412, 421 (1978)); *see also Doering v. Union Cty. Bd. of Chosen Freeholders,* 857 F.2d 191, 194 (3d Cir. 1988) ("This Court and others have interpreted [the] language [of Rule 11] to prescribe sanctions, including fees, only in the 'exceptional circumstance' where a claim or motion is patently unmeritorious or frivolous.") (citations omitted); *Flanagan v. Warden, U.S. Penitentiary*, 784 F. Supp. 178, 182 (M.D. Pa. Feb. 19, 1992).

Further, "[t]he legal standard to be applied when evaluating conduct allegedly violative of Rule 11 is reasonableness under the circumstances." *Ford Motor Co. v. Summit Motor Prods., Inc.,* 930 F.2d 277, 289 (3d Cir. 1991) (citing *Bus. Guides v. Chromatic Commc'ns Enter., Inc.,* 498 U.S. 533, 546–47 (1991)). Reasonableness in the context of Rule 11 is "an objective knowledge or belief at the time of the filing of the challenged paper that the claim was well-grounded in law and fact." *Ford,* 930 F.2d at 289. "The wisdom of hindsight is to be avoided; the attorney's conduct must be judged by what was reasonable to believe at the time the pleading, motion, or other paper was submitted." *Schering Corp. v. Vitarine Pharm., Inc.,*

11

889 F.2d 490, 496 (3d Cir. 1989). Nonetheless, "the imposition of sanctions for a Rule 11 violation is discretionary rather than mandatory." *Grider v. Keystone Health Plan Cent., Inc.,* 580 F.3d 119, 146 n. 28 (3d Cir. 2009) (citation omitted); *see also Marlowe Pat Holdings v. Ford Motor Co.,* No. CIV.A. 11-7044 PGS, 2013 WL 6383122, at *2 (D.N.J. Dec. 5, 2013) ("[I]mposing sanctions is an extraordinary remedy to be exercised with restraint.").

Here, the record reflects that Camelback filed a Third-Party Complaint against Whitewater on November 10, 2020, after receiving consent from the Court on October 15, 2020. (Doc. 63; Doc. 61). The Court considered the Motion for Leave to File in full and issued an Order granting the motion. (Doc. 63, at 1). Although Rivas contends that her consent was not freely given or fully informed, this does not interfere with the Court's granting of Camelback's Motion to File. (Doc. 61). In its Motion for Leave to File, Camelback did not misrepresent any issue to the Court, as is required by Rule 11. (Doc. 46); Fed. R. Civ. P. 11.

Therefore, the Court does not find that exceptional circumstances exist to impose sanctions, as leave was given to Camelback to file a Third-Party Complaint by this Court and Camelback reasonably filed the Third-Party Complaint. (Doc. 61; Doc. 63); *see Doering,* 857 F.2d at 194; *Gaiardo,* 835 F.2d. at 482. Accordingly, the challenged conduct is not an "exceptional circumstance" that merits the imposition of sanctions in this case. *See Doering,* 857 F.2d at 194; *Gaiardo,* 835 F.2d. at 482; *see also BNB,* 2015 WL 9480030, at *3. Thus, Rivas's Motion for Sanctions is **DENIED.** (Doc. 76).

### III.   CONCLUSION

Based on the foregoing, it is so ordered that Third-Party Defendant's Motion to Dismiss the Third-Party Complaint is **GRANTED** (Doc. 69). The Third-Party Plaintiff and Third-Party Defendants are to engage in mediation of their claims per their agreement. (Doc.

63-9, at 9-10). The Third-Party Complaint shall be **DISMISSED** with prejudice.[2] (Doc. 63).

In addition, Plaintiff's Motion for Sanctions (Doc. 76) is **DENIED.**

      An appropriate Order follows.

                                                        **BY THE COURT:**

**Dated: July 27, 2021**                   *s/ Karoline Mehalchick*
                                                 **KAROLINE MEHALCHICK**
                                                 **Chief United States Magistrate Judge**

---

[2] The agreement between Whitewater and Camelback states "if neither direct discussions nor mediation successfully resolve the dispute, the dispute shall be resolved by litigation which shall be commenced only in state or federal court located in Albany County, New York." (Doc. 69-3, at 9-10). Therefore, per the choice of law provision within the agreement, any outstanding claims still pending between Whitewater and Camelback at the conclusion of mediation shall be resolved in a court located in Albany County, New York and not the Middle District of Pennsylvania. (Doc. 69-3, at 9-10).